**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUSIVILLE DIVISION**

DARREN LAMAR RENDER                                                    PLAINTIFF

v.                                                 CIVIL ACTION NO. 3:26-CV-P71-CRS

JEFF TINDALL, et al.                                                 DEFENDANTS

<u>MEMORANDUM OPINION</u>

Plaintiff Darren Lamar Render, a pretrial detainee proceeding *pro se*, initiated this 42 U.S.C. § 1983 action.  The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the following reasons, this action will be dismissed.

**I. STATEMENT OF CLAIMS**

Plaintiff, who is housed at the Oldham County Jail (OCJ), sues the following OCJ employees in their individual and official capacities: Jailer Jeff Tindall, Major Dana Liter, Sergeants Ozzy Rodriguez and Daniel Grace,[1] and Deputy MSB Badge #416.

Plaintiff alleges that on December 18, 2025, while in bed, Deputy MSB Badge #416, a woman, came in to deliver his "commissary" and then lingered in his cell.  When he told her that he only had his boxer shorts on under his blanket, she responded, "It's a D**k, like I haven't seen [one].  I got three kids[.]"  He alleges that she also said "something else."  Because her comments made him feel uncomfortable sexually, Plaintiff "put a PREA"[2] on her, but she continued to "come around" him.  Major Liter responded that the PREA was unfounded which violated his First

---

[1] At times in the body of the complaint Plaintiff refers to this Defendant as "Gray."
[2] The Court understands this to be the acronym for the Prison Rape Elimination Act.

Amendment right ("safety issues")[3] and his "Fourteenth Amendment Immunities due process and equal protection." He states that a few days later, during the two-hour period he was allowed to spend outside his cell, Sergeant Grace asked, "[Y]ou put in a PREA?" to which Plaintiff responded affirmatively. Sergeant Grace asked if he could "close it out," and Plaintiff said no because it was "sexual harassment," and something needs to be done. Plaintiff then gave Sergeant Grace a written PREA statement. A couple of weeks later, Plaintiff emailed Major Liter asking why Deputy MSB Badge #416 was "still around me," explaining that she made him feel uncomfortable. Major Liter responded that the PREA coordinator had not found anything, yet Plaintiff was never interviewed by the PREA coordinator. He also spoke to Sergeant Grace about being "unsafe."

Plaintiff next claims that he emailed Major Liter three times about why Sergeants Grace and Rodriguez moved him to a single cell even though he did not ask for one. He also states that, at his request, his attorney called the U.S. Marshal and the OCJ to request his transfer to another facility due to OCJ's "unsanitary" conditions. Plaintiff claims that although he spoke to Jailer Tindall about "all his issues," he was moved from his cell and put in the "hole . . . under Jailer review for 19 days because Tindall had nowhere to house me after the review."

Plaintiff alleges that Major Liter, Sergeant Grace, and Deputy MSB Badge #416 violated his Fourteenth Amendment due process and equal protection rights, the Eighth Amendment's cruel and unusual punishment clause, and the First and Sixth Amendments. Plaintiff also alleges that his constitutional rights have been violated due to being placed in the "hole" and "severe isolation," a lack of family visits and calls, limited mental health treatment, and dirty food trays.

As relief, Plaintiff requests compensatory and punitive damages and to be moved to another facility and "get help with my mental[.]"

---

[3] "Safety issues" do not fall within the purview of the First Amendment.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1) and (2).  When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true.  *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).  While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### A. Official Capacity

Plaintiff sues all Defendants in their official capacities.  "Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't*

3

*of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  This means that Plaintiff's official-capacity claims are actually against Oldham County, Defendants' employer.

A municipality such as Oldham County cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged constitutional deprivation.  *Id*.  To state a claim against a municipality, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy."  *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)).  The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability" of the entity under § 1983.  *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Here, Plaintiff's allegations pertain only to himself, and he does not allege that any constitutional violation occurred pursuant to an OCJ policy or custom.  Accordingly, Plaintiff's official-capacity claims must be dismissed for failure to state a claim upon which relief may be granted.  *See, e.g.*, *Parks v. Graceson Cnty. Det. Ctr.*, No. 4:23-CV-P19-JHM, 2023 WL 3066159, at *2 (W.D. Ky. Apr. 24, 2023) (dismissing official-capacity claim where allegations pertained only to plaintiff and did not point to a county custom or policy).

### B. Individual Capacity

#### *1. PREA*

Reading the complaint liberally, Plaintiff contends that Major Liter and Sergeant Grace failed to provide him with an opportunity to be heard in investigating his PREA report, thereby violating his right to due process under the Fourteenth Amendment.  The elements of a procedural

due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff cannot bring a claim for violation of his due process rights because he does not have a protected interest in the investigation of his PREA complaint. *See, e.g., Williams v. Guester*, No. 1:22-cv-984, 2023 WL 1813393 at *8-10 (W.D. Mich. Feb. 8, 2023) (dismissing due process claims based upon prison officials' alleged failure to investigate a PREA complaint); *Miles v. Mitchell*, No. 3:18-CV-P116-CRS, 2018 WL 5929643 at *5 (W.D. Ky. Nov. 13, 2018) (dismissing a PREA failure-to-investigate claim because "an inadequate investigation fails to state a constitutional violation") (citing, *inter alia, Diamond v. Charles*, 476 U.S. 54, 64-65 (1986)); *Jacoby v. PREA Coordinator*, No. 5:17-cv-00053-MHH-TMP, 2017 WL 2962858, at *4 (N.D. Ala. Apr. 4, 2017) ("Whether an inadequate investigation, or the failure to investigate at all, no § 1983 liability is created."), *report and recommendation adopted*, 2017 WL 2957825 (N.D. Ala. July 11, 2017). The Court will dismiss this claim for failure to state a claim.

### 2. Fourteenth Amendment Privileges and Immunities Clause

The Fourteenth Amendment Privileges and Immunities Clause states in pertinent part that "[n]o State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States." U.S. Const. amend. XIV, § 1. Plaintiff fails to explain how his rights have been abridged by state law. Rather, his claims are based upon the conditions of the

5

OCJ and concern the behavior of the OCJ personnel.  Therefore, Plaintiff fails to state a claim for a violation of the Privileges and Immunities Clause of the Fourteenth Amendment.

### 3. Failure to protect

Plaintiff alleges that, even after filing a PREA and telling Sergeant Grace about feeling "unsafe," Deputy MSB Badge #416 was "still around me" and that she made him feel "uncomfortable."

Because Plaintiff indicates that he was a pretrial detainee at the time of the events in question, his claims are analyzed under the Fourteenth Amendment, not the Eighth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Brawner v. Scott Cnty.*, 14 F. 4th 585 (6th Cir. 2021).

The Sixth Circuit has taken the position that for a pretrial detainee to establish deliberate indifference for failure to protect requires that "(1) [Defendant] acts intentionally with respect to the conditions under which the plaintiff was confined, (2) those conditions put the plaintiff at substantial risk of harm, (3) he does not take reasonable steps to abate that risk, and (4) by failing to do so he actually causes the plaintiff's injuries." *Buetenmiller v. Macomb Cnty. Jail*, 53 F. 4th 939, 945 (6th Cir. 2022) (internal quotation marks omitted) (citing *Westmoreland v. Butler Cnty.*, 29 F. 4th 721, 729 (6th Cir. 2022)).

Plaintiff describes only one encounter with Deputy MSB Badge #416 in which she said, "It's a D\*\*k, like I haven't seen [one,] I got three kids[,]" and "something else."  Here, no Defendant allowed Deputy MSB Badge #416 to harm Plaintiff, Plaintiff alleges no harm other than feeling "uncomfortable," and the PREA investigation did not reveal a PREA violation.

Further, Deputy MSB Badge #416's comments do not rise to the level of a constitutional violation.  Even if it could be said that any Defendant acted intentionally, Plaintiff's allegations

6

demonstrate there was no substantial risk of harm, and Plaintiff's claim that Sergeant Grace and Major Liter failed to protect him from Deputy MSB Badge #416's verbal harassment fails to state a claim. *See, e.g*, *Shivers v. Briske*, No. 1:24-CV-298, 2024 WL 2208123, at *6 (W.D. Mich. May 16, 2024) (because the verbal harassment at issue did not rise to the level of a constitutional violation, there can be no claim of failure to protect from those comments); *Beene v. Rasseki*, No. 3:10-0285, 2010 WL 2196597, at *6 (M.D. Tenn. May 27, 2010) ("As to defendant Davis' alleged overtures regarding the plaintiff's genitalia, such offensive sexual remarks also do not rise to the level of a constitutional violation."). The Court will dismiss this claim for failure to state a claim.

### 4. Supervisory liability

As to Jailer Tindall, Plaintiff states that he informed him of the issues he was having. He appears to allege that Jailer Tindall, because he is the Jailer, should have taken remedial action on those issues.

The doctrine of supervisor responsibility, or *respondeat superior*, however, does not apply in § 1983 actions to impute liability to supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). "[L]iability of supervisory personnel must be based on more than merely the right to control employees." *Hays*, 668 F.2d at 872. "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon

'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).  Here, Plaintiff bases his claim solely on Jailer Tindall's failure to take action.  This claim will be dismissed for failure to state a claim.

### 5. Single cell

Plaintiff next claims that he wrote Major Liter three times about why Sergeants Grace and Rodriguez moved him to a single cell even though he did not ask for one.

The Supreme Court and the Sixth Circuit Court of Appeals have repeatedly concluded that a prisoner does not have any liberty interest in placement in any particular security classification or housing assignment.  *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (noting that "no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate," and "[t]he same is true of prisoner classification and eligibility for rehabilitative programs"); *Thomas v. Heinritz*, No. 1:24-CV-82, 2024 WL 910376, at *7 (W.D. Mich. Mar. 4, 2024) (same).  Because Plaintiff has not stated a claim, the Court will dismiss this claim as well.

### 6. Equal protection

To state an equal protection claim, a plaintiff "must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).  The Supreme Court has also recognized what is referred to as a "class-of-one" equal protection claim in which the plaintiff does not allege membership in a particular class or group, but instead alleges that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir.

8

2012) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  However, because Plaintiff makes no allegations that would state a claim under either theory, Plaintiff's equal protection claim must be dismissed for failure to state a claim upon which relief may be granted.

### 7. First Amendment

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.  Here, the only allegation that could fall within the parameters of this Amendment is Plaintiff's claim that he experienced a lack of family visits and calls, which, liberally read, might be a First Amendment freedom-of-speech/association claim.

While prisoners have a right to communicate with friends and family, they "do not have a constitutional right to a particular form of communication" under the First Amendment.  *Miles v. Scanlon*, No. 1:21-CV-74, 2021 WL 1809834, at *5 (W.D. Mich. May 6, 2021) (opining that prisoners "do not have a constitutional right to a particular form of communication, such as access to email"); *Lee v. Meador*, No. 1:23-CV-P118-JHM, 2024 WL 993309, at *3 (W.D. Ky. Mar. 7, 2024) (same).  Plaintiff does not allege that he cannot communicate with his family at all, for example by written mail or email.  Plaintiff's First Amendment free speech/association claims will, therefore, be dismissed.

### 8. Sixth Amendment

As to Plaintiff's reference to the Sixth Amendment, that Amendment provides as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the

witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. The facts alleged by Plaintiff do not support a violation of any provision of the Sixth Amendment, and this claim also will be dismissed. *See Bell v. Maglinger*, No. 4:18-CV-P155-JHM, 2019 WL 961989, at *2–3 (W.D. Ky. Feb. 27, 2019).

### 9. Conditions-of-confinement claims

To state a Fourteenth Amendment conditions-of-confinement claim, a pretrial detainee must allege that he was held under conditions that posed an objectively and sufficiently serious threat to his health or safety and that the defendant acted deliberately to impose the alleged condition or recklessly in the face of an "unjustifiably high risk of harm." *Hedges v. Back*, No. 5:20-CV-509-JMH-HAI, 2021 WL 7083121, at *2-3 (E.D. Ky. Dec. 10, 2021) (citing *Brawner*, 14 F. 4th at 596); *Stein v. Gunkel*, No. 19-159-DLB-CJS, 2021 WL 5098685, at *2-3 (E.D. Ky. Nov. 2, 2021). Not every unpleasant experience a prisoner might endure establishes a constitutional violation. *See Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Plaintiff alleges that OCJ's limited mental health treatment and dirty food trays violated his constitutional rights. These "[b]ald assertions regarding a general deprivation of civil rights are insufficient to [state a claim]." *Hahn v. Star Bank*, 190 F.3d 708, 718 (6th Cir. 1999). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S.at 555.

Moreover, Plaintiff does not attribute these conditions to any Defendant, another requirement to state a claim. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the

10

alleged deprivation of federal rights" to state a claim upon which relief may be granted). Even under the liberal standards for *pro se* pleadings, Plaintiff has not enough to state a claim for relief. *See Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) ("Even a *pro se* prisoner must link his allegations to material facts and indicate what each defendant did to violate his rights.") (citations omitted).

"Although a district court may allow a plaintiff to amend his complaint before entering a sua sponte dismissal, it is not required to do so, *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013), and leave to amend should be denied if the amendment would be futile." *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 347 (6th Cir. 2014). Here, amendment of Plaintiff's claims of limited mental health care and dirty trays would be futile. The Constitution does not provide inmates with "unqualified access to healthcare." *Hudson*, 503 U.S. at 9; *Dunson v. Lyons*, No. 3:21-CV-413-BJB, 2021 WL 5435405, at *3 (W.D. Ky. Nov. 19, 2021). And being given dirty food trays does not state a constitutional claim. *See Kinner v. Moore*, No. 15-2105-JDT, 2016 WL 1421016, at *3 (W.D. Tenn. Apr. 8, 2016) (finding that inmate's allegations that "trays are dirty, food products are expired and outdated, meats and other food products are raw or undercooked, the food is cold and inedible, and the portions are inadequate" did not meet the objective standard for a conditions-of-confinement claim); *Dawson v. Louisville Metro Dep't of Corr.*, No. 3:20CV-P856-GNS, 2021 WL 2149211, at *4 (W.D. Ky. May 26, 2021) ("The Court finds that the allegations with regard to the unappetizing food and dirty and peeling trays fail to describe conditions sufficiently serious to meet the objective component of a deliberate indifference claim.").

Finally, Plaintiff's reference to the "hole" appears to be the removal to a single cell by Sergeants Grace and Rodriguez while "Jailer review" took place and where his stay there was

11

extended for 19 days because other housing was unavailable at that time.  Plaintiff also refers to "severe isolation" and being able to leave his cell only two hours per day.

As noted above, "*extreme* deprivations are required to make out a conditions-of-confinement claim."  *Hudson*, 503 U.S. at 9 (emphasis added).  Conditions-of-confinement claims "are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount."  *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017).

Simply being placed "in the hole" is not a constitutional claim.  *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) ("Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim.") (internal quotation marks omitted)).  Here it appears that his placement was not punishment for making a PREA report but was administrative segregation while Plaintiff's claim was investigated, extended by 19 days waiting for another cell to open up. And here his stay was brief.  *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that 30 days in administrative segregation was not an atypical and significant hardship*); Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (holding that "being placed in administrative segregation [for 61 days] does not make it 'atypical and significant'").  The conditions identified by Plaintiff fail to state a claim upon which relief may be granted.

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, dismiss this action.

Date:  July 14, 2026

Charles R. Simpson III, Senior Judge
United States District Court

cc:      Plaintiff, *pro se*
4414.009

12